BINGHAM MCCUTCHEN LLP
Susan Kim
One State Street
Hartford, CT 06103
Telephone: 860.240.2700
Facsimile: 860.240.2800
susan.kim@bingham.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW LUM,<br><br>                        Plaintiff,<br><br>-v-<br><br>DISCOVERY CAPITAL MANAGEMENT, LLC, and DGF SERVICES, LLC,<br>                        Defendants. | 08 Civ. 6352 (NRB)<br><br>**<u>ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>** |

The Defendants, Discovery Capital Management, LLC ("**DCM**") and DGF Services, LLC ("**DGFS**") (collectively DCM and DGFS, "**Defendants**") hereby respectfully submit the following Answer and Affirmative Defenses to the Complaint dated May 16, 2008 commenced by Andrew Lum ("**Lum**" or the "**Plaintiff**").[1] The Defendants submit contemporaneously herewith their Counterclaims against Lum as counterclaim defendant.

## ANSWER

1.      Defendants lack sufficient knowledge or information to answer the allegations Paragraph 1 and therefore leave Plaintiff to his proof.

---

[1] Pursuant to 28 U.S.C. § 1404(a), Discovery intends to seek a transfer of this action to the United States District Court for the District of Connecticut on the basis that, among other things, Connecticut is the locus of the operative facts, the relevant documents are located in Connecticut, the witnesses, including Lum, work(ed) in Connecticut, Defendants are located in Connecticut and Connecticut law applies to this case.

A/72630160.1

2.  Defendants admit so much of Paragraph 2 as alleges that they transact business with companies located in New York City. Defendants further admit that they are Connecticut-based hedge-fund companies. Defendants deny any and all contrary remaining characterizations or allegations contained in Paragraph 2.

3.  The allegations contained in Paragraph 3 constitute legal conclusions to which Defendants are not required to admit or deny.

4.  Defendants deny the allegations contained in Paragraph 4.

5.  Defendants deny the allegations contained in Paragraph 5.

6.  Defendants deny the allegations contained in Paragraph 6.

7.  Defendants admit so much of Paragraph 7 as alleges that he was hired as a trader in 2006. Defendants deny the remaining allegations contained in Paragraph 7.

8.  Defendants admit that at the beginning of 2007, Lum was paid a discretionary bonus of $700,000 for his performance in 2006.

9.  Defendants deny the allegations contained in Paragraph 9.

10. Defendants deny the allegations contained in Paragraph 10.

11. Defendants deny the allegation contained in Paragraph 11.

12. Defendants deny the allegation contained in Paragraph 12.

13. Defendants admit so much of Paragraph 13 as alleges that Plaintiff was advised that he performed poorly that year, and that Plaintiff received a discretionary bonus of $1,200,000.00. Defendant denies the remaining allegations contained in Paragraph 13.

14. Defendants deny the allegations contained in Paragraph 14.

15. Defendants deny the allegations contained in Paragraph 15.

16. Defendants deny the allegations contained in Paragraph 16.

### First Cause of Action

17. Defendants incorporate their responses to Paragraphs 1 through 16 as though fully set forth herein.

18. The allegations contained in Paragraph 18 constitute conclusions of law to which Defendants are not required to respond. To the extent that Paragraph 18 contains assertions of fact, such assertions are denied.

19. Defendants deny the allegations contained in Paragraph 19.

### Second Cause of Action

20. Defendants incorporate their responses to Paragraphs 1 through 16 and 18 as though fully set forth herein.

21. The allegations contained in Paragraph 21 constitute conclusions of law to which Defendants are not required to respond. To the extent that Paragraph 21 contains assertions of fact, such assertions are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

As to each cause of action, Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

As to each cause of action, to the extent Plaintiff suffered any damages, which Defendants deny, Plaintiff's damages were caused by his own actions or inactions including his own poor job performance.

### THIRD AFFIRMATIVE DEFENSE

As to each cause of action, Plaintiff's claims are barred by the doctrine of accord and satisfaction.

A/72630160.1

## FOURTH AFFIRMATIVE DEFENSE

As to Plaintiff's second cause of action, New York law is inapplicable and therefore Plaintiff is not entitled to statutory damages and penalties under §§ 191(c) and 198 under the New York Labor Law.

## FIFTH AFFIRMATIVE DEFENSE

As to each cause of action, Plaintiff's claims are barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

As to each cause of action, Plaintiff's claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

As to each cause of action, Plaintiff's claims are barred by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

As to each cause of action, Plaintiff's claims are barred by the doctrine of estoppel.

## COUNTERCLAIM

Counterclaim Plaintiffs Discovery Capital Management, LLC ("**DCM**") and DGF Services, LLC ("**DGFS**") (DCM and DGFS are collectively, "**Discovery**") hereby bring the following counterclaims against Andrew Lum ("**Lum**") as follows:

## PARTIES

1.  Counterclaim Plaintiff DCM is a Connecticut limited liability company with its principal place of business located at 20 Marshall Street, South Norwalk, Connecticut.

2.  Counterclaim Plaintiff DGFS is a Connecticut limited liability company with its principal place of business located at 20 Marshall Street, South Norwalk, Connecticut.

3.  Upon information and belief, Counterclaim Defendant Lum is a New York resident. At all times relevant to his employment, Lum worked at Discovery's offices in Connecticut.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Among other jurisdictions, venue in this district is proper under 28 U.S.C. § 1391.[2]

---

[2] Pursuant to 28 U.S.C. § 1404(a), Discovery intends to seek a transfer of this action to the United States District Court for the District of Connecticut on the basis that, among other things, Connecticut is the locus of the operative facts, the relevant documents are located in Connecticut, the witnesses, including Lum, work(ed) in Connecticut, Discovery is located in Connecticut and Connecticut law applies to this case.

A/72630160.1

## FACTUAL ALLEGATIONS

4. DCM, a private boutique investment firm, was formed in 1999 by, among others, Robert Citrone ("**Citrone**"), an experienced and successful trader, investor and businessman. Presently, Citrone is the sole member of DCM.

5. Soon after DCM's formation, Lum was hired as a temporary employee to provide investment trading services, but later became a full-time employee. Eventually, in early 2001, Lum became a member of DCM.

6. As a trader and as a member of DCM, Lum understood both the critical nature of his work to DCM and to its clients (who relied upon Lum's skills and judgment) as well as the importance of maintaining the company's credibility and reputation within the industry and to its clients.

7. In 2002, Lum resigned from DCM and launched his own hedge fund. In an effort to support Lum in his new venture, Citrone infused Lum's fund with seed capital, and became the largest investor in Lum's hedge fund. Additionally, Citrone served as a referral source to other potential investors interested in Lum's company.

8. Upon information and belief, Lum was unsuccessful in running his hedge fund. As a result, Lum shut down his operations and contacted Citrone seeking to be rehired by DCM as a trader.

9. Citrone considered Lum a personal friend. Given Lum's financial straits, in or about June 2006, Citrone, as managing member of DCM, agreed to re-hire Lum as a mid-level trader. DCM and Lum entered into a six-month Consulting Agreement pursuant to which Lum received a generous sign-on bonus of $75,000, and a monthly salary of $12,500. Lum could also

be eligible for discretionary year-end bonus. A copy of the Consulting Agreement is attached hereto as Exhibit A and incorporated herein.

10. Upon the expiration of the Consulting Agreement, on or about January 1, 2007, Lum became an at-will employee of DCM (and later, of DGFS, an affiliate) to provide investment trading services. Under the terms of his employment, Lum was to be paid an annual salary of $150,000.00 and would be eligible for a discretionary bonus based upon both his and the companies' performance. The salary and bonus structure to which Lum agreed was consistent with the compensation structure of other similarly situated traders at Discovery.

11. As a trader, Lum was responsible for multi-million dollar trades in a variety of markets, and traded countless highly volatile investment products on Discovery's behalf. Lum, like all mid-level traders, was encouraged to develop trade strategies. Citrone, however, ultimately determined the final trading positions Discovery would adopt in the various markets and Lum was required to execute trades based on Citrone's directives.

12. Moreover, because most very large trades occur through verbal orders placed through broker/dealers, trust and confidence are paramount. In the case of a dispute over a specific trade, it often comes down to a matter of credibility between the broker/dealer and the hedge fund. Thus, not only could Lum, on any given trade, cost the fund millions of dollars, but the Discovery name was at stake with every trade he made. DCM and DGFS unquestionably relied upon Lum's skill, judgment and credibility.

13. For the year 2006, Lum's performance was mediocre at best and in 2007 it was no better. In fact, Lum, in his 2007 self-evaluation acknowledged his lackluster performance. Based on his and Discovery's overall performance, Lum received a discretionary bonus of $1,200,000.00 ("**2007 Bonus**"), an amount below the bonuses awarded to similarly situated

traders whose performances were superior to Lum's. Lum accepted the bonus, and invoiced DGFS for $1,200,000.00 and directed that the payment be wired to an account he owned or controlled. (A copy of the wire instructions is attached hereto as Exhibit B).

14. Lum's performance during the beginning of 2008 was abysmal. In February of 2008, Lum not only ignored clear directives given by Citrone concerning the sale of certain shares of a company, but he executed the trade in direct contravention to Citrone's mandate. As a result, Discovery and their investors suffered a substantial loss.

15. Rather than disclosing his trading error and loss to either Citrone or his supervisor, which would have allowed Discovery to attempt to reduce the losses or to properly address the error with the clients, Lum intentionally concealed evidence that a trade had even been made (the "**Fraudulent Trade**").

16. Only after being confronted by his supervisor, did Lum confess that he had even engaged in the Fraudulent Trade. However, rather than admitting responsibility for his gross error and concealment, Lum blamed the broker/dealer who had executed the trade at Lum's direction. Lum told his supervisor that the broker/dealer had admitted to having committed the error and agreed to fully compensate Discovery for all losses. That story turned out to be false. Lum's Fraudulent Trade and subsequent effort to blame others subjected Discovery to reputational damage with brokers and clients.

17. After being confronted with the Fraudulent Trade, Lum return to an independent contracting relationship. However, in March of 2008, after DCM wired Lum his 2007 bonus payment, Lum abruptly stopped coming to work, without providing any notice to either Citrone or his supervisor, and despite the fact that he was only one mid-level night trader at Discovery.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty and Duty of Loyalty

18. Counterclaim Plaintiffs DCM and DGFS incorporate by reference Paragraphs 1 through 20 as if more fully set forth herein.

19. As a hedge fund trader, Lum had special skills, was entrusted with the knowledge of DCM's and DGFS's trading strategy, and was responsible for appropriately executing those strategies. Moreover, as the only mid-level night-trader, Lum knew that Discovery relied heavily upon him to properly execute those trades in the evenings. As such, Lum owed fiduciary duties, including the duty of loyalty, to DCM and DGFS.

20. Lum breached his fiduciary duties, including the duty of loyalty, by:

    (a) contravening clear directives in the course of executing a trade;

    (b) engaging in the Fraudulent Trade;

    (c) improperly placing blame for the Fraudulent Trade on the broker/dealer in an effort to cover his tracks;

    (d) failing to return to work after having been paid the 2007 Bonus and without notice to DCM and/or DGFS.

21. As a result, DCM and DGFS have suffered monetary damages.

### COUNT II
### Fraud

22. Counterclaim Plaintiffs DCM and DGFS incorporate by reference Paragraphs 1 through 21 as if more fully set forth herein.

23. Lum intentionally concealed the Fraudulent Trade, all in an effort to evade responsibility for his improper conduct and to protect his job.

24.     After discovery of the trade by his supervisor, Lum intentionally failed to acknowledge his responsibility for the Fraudulent Trade by misrepresenting that the broker/dealer had taken full responsibility for the Fraudulent Trade and would make full restitution of all the losses. At the time Lum made that statement, he knew it was false.

25.     DCM and DGFS placed great trust and responsibility in Lum and were entitled to rely upon his representations and omissions.

26.     DCM and DGFS did rely upon Lum's misrepresentations and omissions.

27.     DCM and DGFS have suffered monetary damages as a result of Lum's intentional failure to disclose the Trading Error.

## COUNT III
### Negligence

28.     Counterclaim Plaintiffs DCM and DGFS incorporate by reference Paragraphs 1 through 27 as if more fully set forth herein.

29.     As a trader, Lum owed Discovery and their investors a duty of care to properly execute all trades in accordance with clear directives.

30.     Lum breached his duty of care by executing a trade in direct contravention of clear directives, subsequently concealing evidence of that trading error, and fabricating a story in an improper effort to shift blame away from him onto the broker/dealer for his Fraudulent Trade.

31.     DCM and DGFS have suffered monetary damages and injury to their business reputation and good will as a result of Lum's carelessness and negligence.

## COUNT IV
### Breach of the Covenant of Good Faith and Fair Dealing

32.     Counterclaim Plaintiffs DCM and DGFS incorporate by reference paragraphs 1 through 31 as if more fully set forth herein.

33. The agreement between Lum and DCM concerning his salary and bonus eligibility included an implied covenant of good faith and fair dealing.

34. Lum breached the implied covenant of good faith and fair dealing by accepting payment in full of the 2007 Bonus and then instituting this lawsuit seeking additional monies to which he is not entitled.

35. DCM and DGFS have suffered damages as a result of Lum's breach of the implied covenant of good faith and fair dealing.

## COUNT V
### Vexatious Litigation

36. Counterclaim Plaintiffs DCM and DGFS incorporate by reference paragraphs 1 through 35 as if more fully set forth herein.

37. Lum has brought suit against DCM and DGFS under New York law for breach of contract and labor law violations on the basis that he was allegedly entitled to a non-discretionary bonus of "two percent of the top line" for his performance in 2007.

38. At all relevant times, Lum worked for a Connecticut employer in Connecticut. Thus, New York labor law does not apply to Lum's dispute.

39. In 2007, Lum was eligible for a discretionary bonus like all other similarly situated traders. Lum received and accepted the $1,200,000.00 bonus. He even provided specific instructions as to where and how that payment should be made.

40. Lum falsely, maliciously and without cause claims entitlement to a "top line" bonus when no such bonus structure exists within Discovery and after he agreed to accept the $1,200,000.00 even in light of his poor performance.

41. Lum's suit is without probable cause and is vexatious both in common law and pursuant to Conn. Gen. Stat. § 52-568.

42. DCM and DGFS have suffered damages as a result of Lum's vexatious litigation.

## COUNT VI
### Declaratory Judgment

43. Counterclaim Plaintiffs DCM and DGFS incorporate by reference paragraphs 1 through 42 as if more fully set forth herein.

44. Lum and DCM entered into a verbal agreement whereby Lum was employed on an at-will basis, with a base salary. Lum was eligible for a year-end discretionary bonus based upon both his performance and the performance of the funds.

45. As Lum conceded, his performance during 2007 was mediocre, and he received a bonus of $1,200,000.00, an amount lower than other similarly situated traders.

46. Lum accepted the 2007 Bonus without qualification. Indeed, as noted above, Lum invoiced Discovery in the amount of $1,200,000.00 and gave Discovery specific instructions to wire the funds to his account.

47. Notwithstanding that Lum was paid his entire 2007 Bonus, Lum nonetheless complains that he is entitled to a further bonus based upon a bonus structure that does not in fact exist.

48. Discovery requests a declaration that, in accordance with their agreement with Lum, Lum is not entitled to any additional bonus payments or any other sums from Discovery.

## PRAYER FOR DAMAGES

WHEREFORE, the Counterclaim Plaintiffs DCM and DGFS pray for the following damages:

(1) Compensatory damages in an amount to be proven at trial;

(2) An order declaring that Lum is not owed any sums from DCM or DGFS;

(3) An order dismissing the action initiated by Lum against DCM and DGFS;

(4) Punitive damages with respect to the Second Count;

(5) Statutory Damages pursuant to Conn. Gen. Stat. § 52-568;

(6) Double or Treble damages with respect to the Second and Fifth Counts;

(7) Attorneys' Fees; and

(8) Such other and further relief as this Court deems just, equitable and proper.

Dated: Hartford, Connecticut
August 29, 2008

**BINGHAM McCUTCHEN LLP**

By: /s/ Susan Kim
Susan Kim
One State Street
Hartford, CT 06103
Telephone: 860.240.2700
Facsimile: 860.240.2800
susan.kim@bingham.com

*Attorney for Defendants Discovery Capital Management, LLC and DGF Services, LLC*

A/72630160.1